PARTOLA MANUFACTURING COMPANY, Appellant, *v.* GENERAL CHEMICAL COMPANY, Respondent.

First Department, July 1, 1921.

**Sales — action for refusal to deliver — contention of seller that buyer did not demand delivery within time specified not sustained in view of modification of contract — direction for delivery in " car load lots f. o. b. New York" ambiguous in view of location of both parties in Greater New York — liability of buyer to pay cost of transportation — waiver by seller of objection that shipping instructions were not sufficiently specific — delay in sending shipping instructions not sufficient to authorize seller to renounce obligations under contract — failure of seller to rescind contract.**

In an action by a buyer to recover damages for breach of contract by the seller in refusing to deliver goods, *held*, that the defendant's refusal to deliver upon the sole ground that no demand was made by the plaintiff for shipment until after the expiration of the time mentioned in the contract cannot be sustained, since the contract was so modified as to extend the time for delivery.

The provision of the contract that delivery was to be in barrels " car load lots f. o. b. New York " is ambiguous, in view of the fact that the defendant's works were at Long Island City, and that the goods were sold for consumption by the plaintiff whose factory was in Manhattan, a fair interpretation of the contract calls for the transportation of the goods to Manhattan, with the liability of the buyer to pay the cost of transportation.

In view of the ambiguous provision as to delivery, the direction by the buyer for delivery either to its factory or to some dock in New York was not sufficiently specific, but the seller by failing to object upon that ground waived any insufficiency in the shipping instructions.

In view of section 126 of the Personal Property Law and the provisions of the contract, assuming that there was unreasonable delay in sending shipping instructions and making demand for the installments which might be due during the month mentioned in the original contract, there is nothing to show that such failure on the part of the buyer was sufficiently material to authorize the seller entirely to renounce its obligations under the contract.

Moreover, assuming that there was such unreasonable delay in demanding shipment as authorized the seller to rescind the contract under section 146 of the Personal Property Law, it did not elect to rescind nor place its refusal to deliver upon any such ground.

APPEAL by the plaintiff, Partola Manufacturing Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of April, 1920, upon the decision of the court rendered after a trial at the New York Trial Term, a jury having been waived.

*Albert A. Hovell* of counsel [*Raymond C. Haff* with him on the brief; *Hovell, McChesney & Clarkson,* attorneys], for the appellant.

*Schuyler M. Meyer* of counsel [*Steele & Otis,* attorneys], for the respondent.

SMITH, J.:

This action is brought by the plaintiff to recover damages for a breach of contract in the refusal to deliver blue vitriol. The sale was made through a broker and a broker's memorandum was delivered to the plaintiff which reads as follows:

" NEW YORK, *August* 10*th*/17.
" Sold for account of General Chemical Co.
" Selling Agents for Nichols Copper Co.
" To Partola Mfg. Co., 160 Second Ave., New York City. abt. (150) One hundred and fifty tons Nichols Triangle brand 98/99% large crystals, Blue Vitriol, standard quality, (9) nine cents per lb. Payable (30) thirty days net, or cash (10) days less (1%) one percent. buyers option, from delivery.

Shipments from works during last half of October, 1917. Sellers not to be held for contingencies beyond their control. tons of 2000 lbs. net.   " H.W. HENNING & SON

" FREDERICK ENDIES

" H. W. HENNING & SON,                           *Brokers*

" Eighty Maiden Lane."

This contract was subsequently modified so as to provide that no carload should be ordered until payment by the plaintiff of a prior carload delivery. The original contract provided for the deliveries in October. Inasmuch, however, as by the modified contract the plaintiff was given ten days in which to pay for a carload, the effect of the modification before mentioned would operate to extend the time of delivery from sixty to eighty days after October ninth, and this construction has been given to the contract as modified by the Trial Term. From the evidence a carload consisted of about eighteen tons, so that to perform the contract, from six to eight carloads would be required. No deliveries were asked for in October. On November tenth, however, the plaintiff demanded delivery. To this the defendant responded by telephone to the effect that the contract provided for deliveries in October, and as October had passed, the defendant insisted that it was not bound to make delivery upon the demand of November tenth.

After delivery by the broker of the broker's memorandum, the contracts were written out in full and a copy was sent to the plaintiff which signed the same. The defendant, however, neglected to sign its copy, but did not return the same or make objection thereto. No question under the Statute of Frauds is presented by the pleadings. In the contract as written out it was provided that the goods were sold for consumption and not for resale. The plaintiff's factory was situated at 207 East Tenth street, and the delivery demanded upon November tenth was for delivery at that place or, if that were not practical, to any downtown New York pier. The brokers were the selling agents for the defendant which had its factory in Long Island City, which is within the greater city of New York.

The first question to be considered is the effect of the

provision in the contract that the delivery was to be in barrels "car load lots f. o. b. New York." Inasmuch as the defendant's works were at Long Island City, within the city of Greater New York, and as the goods were sold for consumption by the plaintiff, whose factory was in Manhattan, this provision of the contract that the delivery was to be in carload lots f. o. b. New York is ambiguous. Some of the experts as to custom have testified upon the effect of this provision in such a contract, and some of them say that it has no significance. An f. o. b. contract, however, is recognized as placing the cost of transportation upon the buyer, and, while Long Island City is in the city of Greater New York, a fair interpretation of this contract to my mind is to call for a transportation of the goods to Manhattan with the liability of the buyer to pay the cost of transportation.

The question then arises as to the requirement of the buyer to give shipping instructions as to the carrier and method of transportation, whether the goods shall be transported by truck or by water. In view of this ambiguity, I am of opinion that the direction for delivery either to the plaintiff's factory or to some dock in New York was not sufficiently specific. But the defendant made no objection upon that ground, but placed the refusal to deliver purely upon the limit of its liability to deliver during the month of October. If more specific instructions had been asked they would undoubtedly have been given, and the defendant cannot now claim a refusal to deliver by reason of the indefiniteness of the shipping instructions which was not mentioned as one of the grounds for refusal to make delivery. I am mindful of the fact that the telephonic communication sworn to by the plaintiff of the refusal and the ground therefor is contradicted by the defendant. The probabilities, however, are all with the plaintiff upon this point in issue. Undoubtedly some answer was made to the demand for shipment. The contention that the goods should have been called for under the contract during October is made by the defendant both in its pleadings and in its brief. It is more probable, therefore, that the plaintiff's testimony is correct as to the specification of the ground for refusal in this telephonic communication. The plaintiff swears that just prior to November tenth similar

instructions were given over the telephone which the defendant asked to have put in writing, and the letter of November tenth was written in pursuance of this request on the part of the defendant. Any objection, therefore, that the shipping instructions were not·sufficiently specific must be deemed to have been waived by the defendant.

By section 126 of the Personal Property Law (as added by Laws of 1911, chap. 571) it is provided that if the buyer neglects to take delivery of one or more installments under a contract providing for delivery by installments, " it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken." Assuming that there was unreasonable delay in sending shipping instructions and making demand for the installments which might be due in October, there is nothing in the case to show that such a failure on the part of the plaintiff was sufficiently material to authorize the defendant entirely to renounce its obligations under the contract. In the written contract it is provided: " Each month's shipment to be treated as a separate and independent contract, but if buyer fails to fulfill terms of order, purchase, or payment under this, or other contracts, seller may defer further shipments until such default is made good and may at its option treat such default as final refusal to accept further shipments hereunder."

Under section 146 of the Personal Property Law (as added by Laws of 1911, chap. 571) a seller is authorized to rescind a contract " by giving notice of his election so to do to the buyer." If we assume for the argument that there was such an unreasonable delay in demanding shipment as authorized the seller to rescind the contract, apparently the seller did not elect to rescind nor place its refusal to deliver upon any such ground, but it placed its refusal to perform only upon the ground that no demand for shipment could be made after October, which ground under the contract as modified must be held not to have been well taken.

The conduct of the defendant is not such as to call for any

liberal interpretation of the defendant's rights in this action. After the contract was made the defendant made additional exactions and was then offered an opportunity to rescind the contract by the plaintiff, of which it did not avail itself. The plaintiff complied, however, with all of these new exactions and of the modification as demanded, and it was only when the price had risen somewhat and the execution of the contract would have been unprofitable to the defendant that it refused to perform, placing its refusal upon an entirely inadequate ground.

In my judgment the determination of the trial court that the plaintiff has not established its cause of action was erroneous and should be reversed. The trial court also dismissed the defendant's right of action upon its counterclaim and properly so. But the question is not before us because the defendant has not appealed.

The judgment should, therefore, be reversed and a new trial granted, with costs to appellant to abide the event.

DOWLING, LAUGHLIN and MERRELL, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event. Settle order on notice.